**JOHN D. MARSH, Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS and LEROY QUINN,**
as Commissioner of the Department of Finance of the
Virgin Islands Government, Defendant

Civil No. 76/15

District Court of the Virgin Islands

Div. of St. Croix

May 9, 1977

JAMES & RESNICK, ESQS. (JEFFREY L. RESNICK, ESQ.), *for plaintiff*

JAMES WILLIAM SILVER, ESQ., Assistant Attorney General, V.I., *for defendants*

GARTH,[1] *Circuit Judge*

Plaintiff, John D. Marsh, a former judge of the Municipal Court of the Virgin Islands, in an action brought against the Government of the Virgin Islands and its Commissioner of Finance on January 9, 1976, seeks an accounting (predicated on a declaratory judgment) to determine the amount of money to which Marsh claims he is entitled as a lump sum payment for unused, annual leave accumulated by him at the time when he left office.[2] The

---

[1] Both District Court Judges of the Virgin Islands were recused. The writer of this opinion was assigned on February 28, 1977, pursuant to 48 U.S.C. § 1614(a) to serve temporarily as a judge of the District Court of the Virgin Islands to hear and determine the instant case.

[2] Plaintiff acknowledges that he is currently indebted to the Government of the Virgin Islands for income taxes due but contends that his tax debt is less than the amount owed to him by the Government.

determination of the amount of annual leave compensation which the Government owes Marsh depends upon an interpretation of the annual leave provisions of the Virgin Islands Code, 3 V.I.C. 581–82.[3]

The parties have agreed that there are no disputed issues of fact and have cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56. (See part IV infra.) The motions were submitted for decision on April 22, 1977.

## I.

It is best to set forth the relevant statutory provisions at the outset. Section 587(a) of Title 3 of the Virgin Islands Code, 3 V.I.C. 587(a), provides:

Whenever any civilian officer or employee of the government . . . entitled to leave under sections 581–584 of this title is separated from the Service . . . he shall be paid compensation in a lump sum for all accumulated and current accrued annual or vacation leave to which he is entitled under existing law. Such lump-sum payment shall equal the compensation that such officer or employee would have received had he remained in the Service until the expiration of the period of such annual or vacation leave.

According to section 581(a):

Subject to the provisions of section 582 of this title all *officers and employees* of the Government of the Virgin Islands, . . . shall be entitled to 26 days annual leave, each calendar year exclusive of Sundays and holidays. The part unused in any year shall be accumulated for succeeding years until it totals not exceeding 60 days. . . . (Emphasis added.)

Section 582, enacted as Act No. 2311 in June, 1968, provides:

Notwithstanding the provisions of section 581 . . . all *employees* of the Government of the Virgin Islands . . . who enter Government Service after June 30, 1968, shall accrue annual leave as follows:

---

[3] The annual leave issue is not peculiar to plaintiff Marsh. Apparently, other cases involving the issue presented here are still awaiting disposition.

(1) one-half day for each full biweekly pay period for an employee with less than 3 years of service;

(2) three-fourths day for each full biweekly pay period, except that the accrual for the last full biweekly pay period in the year is one and one-fourth days, for an employee with 3 but less than 15 years of service; and

(3) one day for each full biweekly pay period for an employee with 15 or more years of service. (Emphasis added.)

As may be observed, section 582 provides for less annual leave than section 581(a) and, by its terms, is applicable to "employees" who enter government service after June 30, 1968.

Marsh served as a judge of the Virgin Islands Municipal Court for a term of four years, from November 5, 1971, through November 4, 1975. Due to the demands of his office, Marsh utilized only a small portion of his annual leave. When Marsh left government service in 1975, he was paid, pursuant to section 587(a), a lump sum for accrued, unused annual leave calculated under the formula set forth in section 582. Under that formula, Marsh was compensated for 36 days and 3 hours accumulated leave.

## II.

Marsh contends that his annual leave should be determined under section 581(a) and that, therefore, he is entitled to compensation for 60 days accrued, annual leave. In support of this contention, Marsh claims that, as a Municipal Court Judge, he was an "officer" rather than an "employee" of the Virgin Islands. He further observes that section 581(a), by its terms, is applicable to "officers and employees" whereas section 582 refers only to "employees." Attaching significance to the Legislature's omission of the word "officers" from the provisions of section 582, Marsh argues that section 582 applies only to "employees" who enter government service after June 30, 1968, and that section 581(a) continues to apply to "officers" regardless

of the date upon which they enter government service. Thus, Marsh, an "officer" who entered government service after June 30, 1968, submits that he is entitled to accrued leave of 60 days as determined under section 581(a).

■ In response, the Government maintains that the term "employees" as used in section 582 includes "officers" within its meaning. Therefore, it is urged that Marsh was properly compensated for annual leave under the provisions of section 582. This ambiguity requires that I determine whether or not the word "employees" as used in section 582 includes "officers." In resolving this issue, the function of this court is to construe the statutory language so as to give effect to the intent of the Virgin Islands Legislature. See United States v. American Trucking Associations, Inc., 310 U.S. 534, 542 (1940). As the Supreme Court has stated:

In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy. Our objective is to ascertain the congressional intent and give effect to the legislative will.

Philbrook v. Glodgett, 421 U.S. 707, 713 (1975).

■ In the instant case, the statutory language of section 582 offers little guidance as to the meaning of "employees." Therefore, I must look to all aids which shed light on the legislative intent and proper construction of section 582, "to history and analogy and practice. . . ." United Shoeworkers of America v. Bedell, 506 F.2d 174, 179 (D.C.Cir. 1974), quoting Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 317 (1933).

In 1975, the Virgin Islands Legislature amended section 582 in Act No. 3683, V.I. Session Laws (1975), in an effort to clarify the meaning of the term "employees" as used in that statute. The amendment, which attempted to express the legislative intent as of the date when section 582 was enacted, specified that "officers" were included within the

term and meaning of "employees." The amendment to section 582 which appears in Act No. 3683 reads in relevant part:

Section 1. Title 3, section 582 . . . is amended by the addition of the following paragraph at the end of the section: The word "employees" when used in this section shall include all personnel in the Government Service, including "officers."

Section 2. The paragraph added by this amendment to Title 3, section 582 . . . is declared to be consistent with the intent of the Legislature in Act 2311 (approved July 18, 1968) . . . as to the meaning of the word "employees" as used in section 582. This amendment is curative, remedial and retroactive to July 1, 1968, and is intended to remove any doubt as to the correct meaning of the word "employees" as used in section 582.

■■ There can be no doubt that this amendment to section 582 is highly relevant here. It is well settled that "subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 380–81 (1969); accord, Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger, 517 F.2d 329, 343 (5th Cir. 1975); Sioux Valley Empire Electric Ass'n v. Butz, 504 F.2d 168, 173 (8th Cir. 1974).

In addition, it appears that the word "employees" is used in numerous other provisions of the Virgin Islands Code in a general sense so as to include "officers." See Revised Organic Act, section 29 (1954); 3 V.I.C. 562, 583, 632–37. The language of these provisions is strikingly similar to the language used in sections 581(a) and 582.

For example, sections 583–83a of Title 3 of the Virgin Islands Code, 3 V.I.C. 583–83a, concerning the accrual of sick leave, provide:

583. Sick leave

(a) . . . [a]ll *officers and employees* of the Government . . . are

entitled to sick leave which accrues at the rate of one-half day for each full biweekly pay period.

. . .

(d) Sick leave which is not used by an *employee* accumulates for use in succeeding years.

583a. Monthly notification of accruals

The Commissioner of Finance shall . . . notify all *officers and permanent employees* . . . on a monthly basis . . . . (Emphasis added.)

The statutes providing for Government health insurance, 3 V.I.C. 632–36, make similar use of the terms "officers" and "employees":

632. Health Insurance

(a) The Board . . . is hereby authorized and directed to establish a health insurance plan for Government *officers and employees* and their dependents . . . .

. . .

(c) The health insurance plan shall be designed by the Board (1) to provide a reasonable relationship between the . . . benefits to be included, and the . . . expenses . . . to be incurred by the covered *employees* and dependents . . . .

633. Contract for health insurance

. . .

(e) Each *employee* . . . shall receive a certificate setting forth the benefits to which the *employee* and his dependents are entitled . . . .

635. Coverage for dependents

Each *employee* shall be entitled to have his spouse and dependent children . . . included in the coverage . . . .

636. Termination of Active Employment

(a) The health insurance coverage of any *employee* . . . shall cease upon the discontinuance of his term of *office or employment* . . . . (Emphasis added.)

█ It is clear that, in these statutory provisions, the word "employees" is used in a general sense so as to include "officers." The fact that the terms are used in a similar manner in sections 581(a) and 582 bears on the Legislature's intent with regard to the word "employees" in section 582.

There appear to be no other specific aids to the construction of section 582.[4] I must thus view the foregoing indicia of legislative intent, *i.e.*, the 1975 amendment to section 582 as well as the frequent use of the word "employees" to include "officers" in other provisions of the Virgin Islands Code, in light of the general purpose of section 582. See Kokoszka v. Belford, 417 U.S. 642, 645 (1974).

When defining specific terms in a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.

---

[4] The Government seeks to introduce the individual affidavits of all the living members of the Legislature who voted in favor of section 582 on June 25, 1968. In each affidavit, the affiant declares that, when he voted for section 582, he intended that the word "employees" would include "officers." The affidavits were signed in March, 1975.

I am not persuaded by the Government's affidavits. Aside from any other considerations, and without indicating that I would be persuaded if the situation were otherwise, I note that not all of the legislators have submitted or are referred to in affidavits, and the affidavits themselves have been prepared some seven years after the event. See Schiaffo v. Helstoski, 350 F.Supp. 1076, 1094 (D.N.J. 1972), aff'd in part and rev'd in part, 492 F.2d 413, 428 (3d Cir. 1974). See also Texas Medical Ass'n v. Mathews, 408 F.Supp. 303, 313 (N.D.Tex. 1976); Freedman v. United States, 364 F.Supp. 484, 488 (S.D.Ga. 1973); Allyn v. United States, 461 F.2d 810, 811 (Ct. Cl. 1972).

The Government also originally urged that, on the basis of an opinion by the Virgin Islands Attorney General and the affidavits of several Virgin Islands Finance Commissioners and several retired Attorney Generals who were credited with annual leave under section 582, there has been a longstanding, uniform practice of interpreting section 582 to include "officers." The consistent interpretation of section 582 by the agency charged with administering section 582 would ordinarily be entitled to great weight. See Post Construction Co. v. Government of the Virgin Islands, 359 F.2d 663, 665–66 (3d Cir. 1966).

Plaintiff, Marsh, however, presented the affidavit of Ronald Tonkin, who served as Attorney General of the Virgin Islands from 1971 through 1973 and yet received an accumulated leave payment under section 581(a). The Government understandably has now concluded that there has been no uniform administrative practice with regard to section 582 and thus has withdrawn its reliance on administrative practice as a basis for inferring the legislative intent in section 582.

In light of the record as hereinabove noted and the Government's present position respecting its administrative practice, I have attributed no significance to the Government's prior administrative interpretation.

Kokoszka v. Belford, 417 U.S. 642, 650 (1974), quoting Brown v. Buchesne, 60 U.S. (19 How.) 183, 194 (1857); accord, Ideal Farms Inc. v. Benson, 288 F.2d 608, 613–614 (3d Cir. 1961), cert. denied, 372 U.S. 965 (1963). Courts must give a word in a statute the meaning "which accords most closely with the intention of the enacting legislature and the underlying purpose which led the legislators to choose that particular word." United Artists Television, Inc. v. Fortnightly Corp., 255 F.Supp. 177, 202 (S.D.N.Y. 1966), aff'd, 377 F.2d 872 (2d Cir.), rev'd on other grounds, 392 U.S. 390 (1967).

■ The Government argues that the legislative purpose in enacting section 582 was to decrease the annual leave afforded to individuals employed by the Government of the Virgin Islands. It is contended that the Legislature made a concerted judgment that the annual leave provisions of section 581(a) were overly generous in view of the large number of Virgin Islands holidays, and this fact had an adverse effect on the productivity of the government work force. The Government therefore asserts that, in section 582, the Legislature sought to adjust the amount of annual leave for government personnel to accommodate this public interest.

Significantly, Marsh does not dispute the Government's statement of the Legislature's purpose in reducing the amount of annual leave. Accepting the Government's contention as to the purpose of section 582 and the evil which the Virgin Islands Legislature sought to remedy, there is simply no persuasive reason to construe the word "employees" in section 582 to exclude "officers." Furthermore, the construction asserted by Marsh is directly refuted by the 1975 amendment to section 582, and does not explain or accommodate the Legislature's frequent use in other statutes of the word "employees" where that term is used generally to include "officers."

In fact, Marsh has offered no insight into the legislative intent underlying sections 581(a) and 582. Rather, he relies on Tracy Leigh Development Corp. v. Government of the Virgin Islands, 501 F.2d 439 (3d Cir. 1974). There, Tracy Leigh claimed the right to a construction subsidy from the Virgin Islands Government. The applicable statutory provisions, however, did not expressly include Tracy Leigh's particular construction activity within its terms. Tracy Leigh alleged that the omission of its specific activity (construction of condominiums) from the statute was the result of a drafting oversight. The Third Circuit found no legislative oversight and thus refused to supply the statute with the alleged missing term. On the basis of Tracy Leigh, Marsh argues that this court should not add the word "officers" to section 582.

Marsh's reliance on Tracy Leigh, however, is misplaced. The Government here has not alleged that the word "officers" was inadvertently omitted from section 582 and therefore has not sought to have that term added to the statute. On the contrary, the Government has insisted that the word "employees" as it appears in section 582 *includes* "officers" within its terms, meaning, and intent. In concluding that the Government's position must prevail, I note the Supreme Court's admonition that, while a court should not extend a statute's coverage beyond what was intended, the court "must take care not to narrow the coverage of a statute short of the point where [the Legislature] indicated it should extend." United States v. Bacto-Unidisk, 394 U.S. 784, 800–01 (1969).

III.

Marsh alternatively argues that section 582 violates the Equal Protection Clause of the Fourteenth Amendment in that it arbitrarily and irrationally establishes a classification of government employees, solely on the basis of the

date of entry into government service, under which those hired before July 1, 1968, receive greater benefits than those hired after July 1, 1968. I find that argument to be without merit.

 In Dandridge v. Williams, 397 U.S. 471, 485–86 (1970), a case involving the validity of a state regulation which resulted in some disparity in the granting of welfare payments, the Supreme Court set forth the standard for analyzing equal protection challenges:

[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. . . . The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. . . . A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . . [This standard] is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.

Similarly, in McGowan v. Maryland, 366 U.S. 420, 426 (1961), the court, in addressing an equal protection challenge to state Sunday Blue Laws, declared:

The Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective.

Thus, section 582 must be upheld if it bears a rational relation to the purpose it seeks to achieve. As previously noted, the Government claims that, in 1968, the Legislature came to the conclusion that the then existing annual leave provisions were overly generous and thereby enacted the decreased annual leave provisions of section 582 in order to

increase the productivity of the government work force. No one contests that section 582 as enacted in June 1968 was to be prospective only in its application. The Government contends that the prospective nature of section 582 was the result of the Legislature's fear that retroactive operation would decrease the morale and productivity of those who had already been hired prior to June, 1968 and who consequently had an expectation of the greater annual leave provided under section 581(a). We need not delve into, nor decide, the Legislature's motivation for the prospective nature of section 582, for Marsh has raised no issue concerning this aspect of the statute, undoubtedly because he did not commence his term until November, 1971, a date more than three years beyond the effective date of section 582.

Marsh offers no support for his contention that section 582 is without a rational basis. He appears to rely on only one case, Massey v. Appolonio, 387 F.Supp. 373 (D.Me. 1974), in support of his position. There, the State of Maine sought to prevent recreational fishermen and the great influx of summer residents from depleting the lobster supply through the use of a three-year residency prerequisite for obtaining a license for lobster fishing. A three-judge court found that the residency requirement was without a rational basis in that it was far broader than necessary to accomplish its purpose.

Unlike the statute in Massey, section 582 is not overbroad. By its terms, section 582 has amended the prior annual leave provisions with no effect on those employees who were employed prior to the effective date of June 30, 1968. It accomplished precisely that goal.

## VI.

As I noted in the introduction to this opinion, both parties have moved for summary judgment. The defend-

ants, in opposing Marsh's motion for summary judgment and in cross-moving for summary judgment, limited their motion to Marsh's second and third causes of action claiming that they were entitled to judgment as a matter of law as to those two Counts.

The Second Count of Marsh's complaint sought a declaratory judgment that section 581(a), rather than section 582, was applicable to Marsh as a former Judge of the Municipal Court, thereby affording him greater annual leave compensation. The prayer for relief in Count 2 also referred to the accounting sought in Count 1. In effect, Marsh claimed in Count 2 that if his interpretation of the relevant statute was adopted by the court, it should be implemented by an award of compensation in his favor under Count 1 (subject, of course, to his indebtedness for income taxes, see note 2 supra).

Marsh's third cause of action was predicated upon the theory that section 582 resulted in a classification in violation of the Equal Protection Clause of the Fourteenth Amendment. Having sought such a decree under Count 3, he again asked for a judgment implementing that decree in the accounting (and resultant compensation) sought in Count 1.

Marsh's first Count, as noted, was for an accounting and a judgment in his favor for those monies adjudged to be due him from the Government. Obviously, the determination of monies due Marsh depended upon the disposition of the second and third Counts, as to which the defendant had cross-moved.

Having determined that the Government's motion for summary judgment must be granted and Marsh's motion for summary judgment must be denied, it follows that Marsh is entitled to neither an accounting nor monies. Judgment must therefore be entered in favor of the Government and against Marsh on Count 1, as well as on

Counts 2 and 3, for the disposition of the first Count is compelled by the action taken with respect to the second and third Counts.

## V.

The District Court Clerk of the Virgin Islands is directed to date and file this opinion and the order which accompanies it directly upon his receipt of same. Both the opinion and the order are to be dated the same date and will become effective only on the date inscribed thereon by the District Court Clerk.

For the reasons set forth in the opinion of the court in the above entitled cause, which opinion has been filed this date, it is hereby

ORDERED that defendants' motion for summary judgment be and is hereby granted. For the reasons set forth in Part IV of the said opinion, judgment for the defendants will therefore be granted as to all Counts of the plaintiff's complaint.

The plaintiff's motion for summary judgment is hereby denied.

Each party will bear its own costs.